UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present          Not Present

**Proceedings:**    (IN CHAMBERS - DEFENDANT DANIEL BUNCH'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION (Dkt. 91, filed on August 30, 2024)

DEFENDANT BRANDON KIEFER'S MOTION FOR SUMMARY JUDGMENT (Dkt. 94, filed on August 30, 2024)

DEFENDANT AARON GREEN'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION (Dkt. 97, filed on August 30, 2024)

## I.    INTRODUCTION

On April 16, 2021, plaintiff Zeeshan Khan ("Khan") filed a complaint against defendant City of Los Angeles ("City"); defendant Los Angeles Police Department ("LAPD"); defendant Michel Moore, LAPD's Chief of Police, in his individual and official capacities ("Moore"); defendant Officer Aaron Green ("Green"); and Does 1 through 10. Dkt. 1 at 2.

On June 18, 2021, plaintiff Khan filed the first amended complaint, adding Christina Astorga ("Astorga") as a plaintiff. Dkt. 11 at 2. On August 19, 2021, plaintiffs Khan and Astorga filed the second amended complaint, adding plaintiff Ringo Chiu ("Chiu") as a plaintiff. Dkt. 25 at 2. On March 2, 2022, plaintiffs Khan, Astorga, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|-----------------|
| Title    | Zeeshan H. Khan v. City of Los Angeles et al. | | |

Chiu filed the third amended complaint, the operative complaint in this action. Dkt. 49 ("TAC"). The TAC named defendant Sergeant Brandon Kiefer ("Kiefer") as Doe 1 and defendant Sergeant Daniel Bunch ("Bunch") as Doe 2. Dkt. 49 at 2. It alleges five claims for relief: (1) violation of plaintiffs' First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983") by Kiefer, Bunch, Green, and the individual Doe defendants; (2) violation of plaintiffs' First and Fourth Amendment rights pursuant to Section 1983 by Moore, Kiefer, Bunch, and the supervisory Doe defendants; (3) violation of plaintiffs' First and Fourth Amendment rights pursuant to Section 1983 by City and its relevant policymaker, Moore; (4) violation of the Bane Civil Rights Act (California Civil Code §§ 52 and 52.1) by all defendants; and (5) assault and battery against Green, Bunch, Kiefer (in a supervisory capacity), and City (in a vicarious capacity). TAC at 10-15. On the same day, defendant LAPD was dismissed with prejudice from the action. Dkt. 50.

On March 23, 2022, Green filed his answer to the TAC. Dkt. 53. On March 28, 2022, City, Kiefer, and Moore filed their answer to the TAC. Dkt. 55. On April 13, 2022, Bunch filed his answer to the TAC. Dkt. 60.

On March 18, 2024, pursuant to a settlement between Khan and defendants, Khan voluntarily dismissed his claims with prejudice. Dkt. 83. Thereafter, on August 16, 2024, pursuant to a settlement between Chiu and defendants, Chiu voluntarily dismissed his claims with prejudice. Dkt. 90.

On August 30, 2024, Bunch filed a motion for summary judgment, or in the alternative, summary adjudication. Dkt. 91 ("MSJ 1"). He concurrently filed a statement of uncontroverted facts, dkt. 92, and a notice of manual filing of Exhibits 1 and 2, dkt. 93. On the same day, Kiefer filed a motion for summary judgment. Dkt. 94 ("MSJ 2"). He concurrently filed a statement of uncontroverted facts, dkt. 95, and a notice of lodging of Exhibits C and E, dkt. 96. Green also filed a motion for summary judgment, or in the alternative, summary adjudication. Dkt. 97 ("MSJ 3"). He concurrently filed a statement of uncontroverted facts, dkt. 98, and a notice of lodging of Exhibits 9, 10, 12, 13, 14, and 17, dkt. 99.

On September 16, 2024, Astorga, the remaining plaintiff in the case, filed oppositions to Bunch's motion, dkt. 106-2 ("Opp. 1"); Kiefer's motion, dkt. 106-3 ("Opp. 2"); and Green's motion, dkt. 106-1 ("Opp. 3"). She concurrently filed statements of genuine disputes of material fact in response to Bunch, Kiefer, and Green's statements of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|-----------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

uncontroverted facts.  Dkts. 106-4, 106-5, 106-6.  She also filed a notice of manual filing of Exhibits A, A-1, B, B-1. C. C-1. D, D-1, E, and F.  Dkt. 108.

On September 23, 2024, Green filed his reply, dkt. 110 ("Reply 3"); Kiefer filed his reply, dkt. 111 ("Reply 2"), and Bunch filed his reply, dkt. 115 ("Reply 1").  Green did not file a response to Astorga's statement of genuine disputes of material fact.  Kiefer concurrently filed a response to Astorga's statement of genuine disputes of material fact, dkt. 112 ("SUF 2"), and objections to Astorga's evidence, dkt. 114.  Bunch concurrently filed a response to Astorga's statement of genuine disputes of material fact, dkt. 116 ("SUF 1"); objections to Astorga's evidence, dkt. 117; and a notice of joinder to defendants City, Moore, and Kiefer's motion for summary judgment, dkt. 118.

On September 30, 2024, Astorga voluntarily dismissed all claims against Moore and voluntarily dismissed her <u>Monell</u> claim (the third claim for relief) against City.  Dkt. 120.  The remaining claims, brought by Astorga, appear to be claim one against Bunch, Kiefer, and Green; claim two against Bunch and Kiefer; claim four against all defendants; and claim five against all defendants.

On October 7, 2024, the Court held a hearing.  Presently before the Court are Bunch, Kiefer, and Green's motions for summary judgment.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

---

[1] Defendants Kiefer and Bunch filed a series of evidentiary objections challenging evidence submitted by Astorga.  Dkt. 114; dkt. 117.  To the extent the Court relies on evidence to which there has been an objection, the Court has overruled the objection to that evidence.  Specifically as to Bunch's objection that plaintiff's deposition excerpts are improperly authenticated, dkt. 117 at 9, the deposition transcripts appear to be regular on their face.  Bunch does not point to any specific testimony that he claims is inaccurate.  Accordingly, the Court overrules this objection.  All other objections are denied as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

### A.    Arrival at the Demonstration

Starting in February 2020, small rallies in support of President Donald Trump were held in the Sunland-Tujunga area of Los Angeles, taking place every Friday on Foothill Boulevard. Dkt. 106-5 ¶ 1. On August 21, 2020, LAPD expected a larger demonstration, with a presence from supporters of President Donald Trump, Black Lives Matter, and other organizations. Id. ¶ 2. Astorga attended this demonstration, wearing a facemask, black shirt, black pants, a burgundy hat, and cut-off denim jacket. Id. ¶ 3. Supporters of President Donald Trump rallied on the north side of Foothill Boulevard, while those opposing President Donald Trump rallied on the south side. SUF 1 ¶ 2. Astorga participated in the rally on the south side. Id.

LAPD deployed a Mobile Field Force to the demonstration because it anticipated the potential for conflict. Dkt. 106-5 ¶ 6. Sergeant Kiefer ("Kiefer"), Sergeant Bunch ("Bunch"), and Officer Green ("Green") were assigned to the Mobile Field Force. SUF 1 ¶ 3. Kiefer and Bunch were both supervisors, but Bunch was subordinate to Kiefer in the chain of command. Id. ¶ 6. Green was Kiefer and Bunch's subordinate. Id. Kiefer claims that his role was to manage his entire squad and protect himself, but Astorga disputes this fact, citing to evidence from her retained expert, Roger Clark, that Kiefer's role was to ensure that officers under his supervision followed LAPD policies. SUF 1 ¶ 8. According to Astorga, Bunch and Kiefer were briefed with an Event Action Plan ("EAP") before the demonstration and were expected to relay the information to their subordinates, including Green. Opp. 1 at 2-4. The EAP states that less-lethal munitions are authorized only for target-specific means, primarily at a suspect's naval area or belt line, when "[a]n officer reasonably believes that a suspect or subject is violently resisting arrest or poses an immediate threat of violence or physical harm." Dkt. 107-2 at 5, 9. It further states that those struck with a bean bag should be transported for medical treatment before booking and that strikes at the head, neck, spine, chest, groin, or kidneys may cause serious injuries. Id. at 9. The EAP also recommends that officers "verbalize basic elements of the use of force" on their body-worn cameras for "later documentation," and recommends and defines tactical de-escalation. Id. at 5.

At the demonstration, several squads of officers from the LAPD Foothill Division, including Kiefer and Green, were lined up in the middle of Foothill Boulevard, to separate the two groups. SUF 1 ¶ 4. Bunch was tasked with forming and supervising a portion of this line of officers, called the "skirmish line." Id. Green was assigned to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|------------------|
| Title    | Zeeshan H. Khan v. City of Los Angeles et al. | | |

protect the officers along the skirmish line with a less-than-lethal beanbag shotgun. Id. ¶ 6. Green was trained in using the beanbag shotgun for crowd control, which had a recommended range of between five and forty-five feet. Dkt. 106-5 ¶¶ 7, 10.

When Green arrived at the demonstration, he claims that he observed an unknown female, later identified as Jill O'Neill ("O'Neill"), strike an officer with a sign at 5:21:54 p.m., while standing next to Astorga. Dkt. 106-5 ¶ 11. Astorga disputes this fact, alleging that the body-worn video ("BWV") shows that O'Neill did not strike, but was jostled by, an officer. Id. Green claims that five seconds later, he saw Astorga grab an officer's baton while in a verbal confrontation. Id. ¶ 12. Astorga claims that the BWV shows an officer jostling with two women, as Astorga held the baton reflexively and then released it. Id.

When Bunch arrived at the demonstration, he observed that there were initially several dozen people in each group, acting non-violently. SUF 1 ¶ 7. He then observed a group of approximately 50-100 individuals arrive and join the group on the south side of the street, wearing gear including helmets, eye protection, sticks, metal objects, large signs, weapons, barricades, and skateboards. Id. Bunch describes this gear as "consistent with anticipated violence." Id. Further, he observed the throwing of rocks, other projectiles, and smoke bombs at officers on the skirmish line and was personally hit with projectiles. Id. ¶ 8. Astorga did not throw any objects. Id. Bunch also claims to have observed individuals from the south side group push officers on the skirmish line, attempt to grab their batons, and spray officers in the face with an "unknown liquid." Id. ¶ 9. Bunch further claims that he was sprayed with an "unknown chemical agent." Id. Astorga objects to these facts as vague as to time, inflammatory, and irrelevant. Id.

The Incident Commander declared the event an unlawful assembly and gave dispersal orders on a megaphone. Dkt. 106-5 ¶ 11. Bunch heard these announcements, but Astorga claims that the initial order was hard to hear, and she was not aware of it until after she was shot. SUF 1 ¶ 10; Opp. 1 at 15. Astorga also claims that neither side left immediately and the announcements continued after the incident. SUF 1 ¶ 10. Officers attempted to separate the groups as confrontations intensified, with protestors throwing rocks, bottles, smoke bombs, and unknown objects, and one throwing a pole. Dkt. 106-5 ¶¶ 14, 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

Objects were thrown until 5:30:27 pm.  Dkt. 106-5 ¶ 16.  The parties dispute the direction then given by Kiefer.  Green claims that Kiefer directed the skirmish line to move protestors back toward the curb.  Id. ¶ 18.  Astorga claims that Kiefer told officers to "push" people, not "move" them.  Id.  Green claims Kiefer's intent was to move the crowd back to clear the street for an additional police squad, but Astorga claims Kiefer intended to move LAPD cars parked in the middle of the street to another parking lot.  Id. ¶ 19.  Bunch next heard officers instructing the crowd to "back up" and "get on the sidewalk," and gave the same instructions himself.  Id. ¶ 11.  Astorga disputes that these instructions were given and describes them as "inaudible" on the BWV.  Id.  Green claims that Astorga heard commands from officers to step back approximately 10 minutes before the use of force incident, but Astorga claims the exchange happened only moments before the incident.  Dkt. 106-5 ¶ 21.

### B.    Alleged Use of Force Incident

Astorga's claims arise from injuries she suffered when, during a demonstration, she was seriously wounded by a baton jab and deployed beanbag.  The parties dispute certain key facts leading up to the use of force against Astorga.

In Bunch's version of events, he saw protestors pushing officers and directed the officers to push the "violent group" back, but the group continued to advance.  SUF 1 ¶ 12.  Astorga disputes this fact, stating that the BWVs show that protestors did not initiate pushing.  Id.  Next, Bunch claims to have heard the voices of unknown female officers on the skirmish line, in need of help.  Id. ¶ 13.  He also claims to have seen protestors assault other officers.  Id.  Astorga disputes these facts, stating that no female voices are audible on the BWVs and that the female officer on the skirmish line across from Astorga, Officer Bolen, denied that she felt threatened.  Id.

Next, Bunch claims that he observed that the protestors pushing the officers were armed with sticks, spray bottles, and other hard objects, while wearing protective gear including shields and helmets.  Id. ¶ 14.  Astorga disputes that she or the woman to her right with the floppy sign, O'Neill , engaged in any such conduct or wore any protective gear.  Id.

Bunch claims that he observed Astorga failing to leave the area.  Id. ¶ 15.  Instead, he claims to have seen Astorga insert herself on the front lines of the crowd, walk into traffic, confront officers, and stand behind a large sign used to shield protestors and push

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

officers. Id. Astorga disputes these facts, stating that the BWVs show Astorga for the full four minutes before Bunch jabbed her, "causing no problems." Id. Bunch further claims that he saw Astorga grab and attempt to pull away an officer's baton, and then raise her hands in a violent manner toward officers being attacked. Id. ¶ 16. Astorga claims that the screenshot relied upon by Bunch, depicting Astorga with a baton, was recorded almost 15 minutes before Bunch used force on her. Id. Allegedly believing that Astorga's actions constituted an immediate threat of violence, Bunch then thrust his baton at Astorga's abdomen area to stop the threat. Id. ¶ 17. Bunch claims he did not use force against Astorga because of her First Amendment activities or to encourage other officers to use force against her, but Astorga claims that he did. Id. ¶¶ 28, 30.

"Almost simultaneously" with his use of the baton, Bunch claims that Green deployed one round from his beanbag shotgun at Astorga. Id. ¶ 19. Bunch claims that Green deployed this round at Astorga because Green saw Astorga assaulting officers—not because of anything that Bunch said to Green. Id. ¶ 20. Astorga disputes this reasoning from Green, stating that Bunch told Green on the BWV that "I'm going to push the crowd right here, and if we need to bean bag, we're going to bean bag," which could be construed as an order. Id. ¶¶ 20, 22. Bunch claims he made this statement approximately 51 *minutes* before Green deployed the beanbag on Astorga and said it only to convey the plan to push the crowd and that beanbags may become necessary. Id. ¶ 25. Astorga claims this statement was made 51 *seconds* before Green shot O'Neill and then Astorga. Id. Bunch and Astorga dispute whether he directed or encouraged officers to use force against Astorga because of her First Amendment activities. Id. ¶ 29.

Bunch further claims that he did not see Green deploy the beanbag at Astorga, as he was focused on Astorga's actions at the time. Id. ¶ 21. He contends that he was several feet away from Green and did not form an opinion as to whether his use of force was reasonable. Id. ¶ 23. Astorga disputes these facts, stating that on Bunch's BWV, Green is visible to Bunch's left, and the overhead camera footage shows them "virtually rubbing shoulders." Id. ¶¶ 21, 22. Bunch further claims he did not and could not determine if any of Green's other uses of force were reasonable. Id. ¶ 24. Astorga again disputes this claim, arguing that Bunch was present when Green fired "repeated rounds 'double tap' and out of policy" at Astorga, and that Bunch was facing directly at Chiu, "an obviously credentialled photojournalist," when Green shot Chiu in the abdomen. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

In Green's version of events, after the dispersal order and as the crowd became more aggressive, he heard a detective yell for an officer to respond with the beanbag shotgun at 5:36:48 p.m. Dkt. 106-5 ¶ 23. Green alleges that Astorga, at the front of the skirmish line, acted aggressively toward officers and was ordered to step back seven times, but she refused to comply. Id. ¶ 26. Astorga claims that the BWV does not show any aggression from Astorga, and when Officer Bolen asked her to back away, she complied. Id. ¶¶ 24, 26. Green claims that O'Neill, standing next to Astorga, was fighting with an officer, and it appeared to Green that Astorga was using a large white sign as a weapon to push, jab, or strike officers. Id. ¶¶ 27, 28, 30. Astorga claims that the BWV shows that O'Neill was not fighting and that while O'Neill was holding a floppy cardboard sign on a thin stick, neither O'Neill nor Astorga were pushing or threatening officers with it. Id. Green alleges that, in that moment, he recognized O'Neill and Astorga as the women he had seen fighting with officers approximately 14 minutes earlier. Id. ¶ 29. Given that Green wrote the cited incident report 11 months after the incident, Astorga claims that a reasonable juror could disbelieve this fact. Id. Further, Astorga claims that Green testified that he did not shoot Astorga because of what he had witnessed 14 minutes earlier. Id.

Next, allegedly believing that Astorga posed an immediate threat of violence to officers and was in control of the stick and sign, Green discharged two rounds from the beanbag shotgun at her navel area. Id. ¶¶ 31, 40. Astorga disputes that she posed a threat and disputes that Green shot twice at her. Id. Rather, Astorga claims that Green shot first at O'Neill and punctured her sign, then pumped the shotgun to chamber another round, and then shot Astorga in her right breast, from a range of five to seven feet. Id. Green claims that he aimed only at Astorga and shot in accordance with LAPD policies, while Astorga claims Green was found to have violated these policies after an internal investigation, leading to a 10-day suspension. Id. ¶¶ 32, 41.

Green claims that after shooting Astorga, she no longer appeared to be an immediate threat. Dkt. 106-5 ¶ 33. However, Green also claims that Astorga continued to confront officers. Id. ¶ 35. Astorga disputes that she was "confronting" officers after the incident, instead alleging that she was complaining to them about her injury. Id. Green claims that Astorga intentionally refused to comply with officers' instructions because she believed her behavior was righteous; Astorga disputes this characterization of her integratory responses. Id. ¶ 37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

As for Kiefer's version of events, the parties agree that several minutes before the incident, Kiefer retrieved additional beanbag shells from Green's patrol car and gave them to Green.  SUF 2 ¶ 4.  The parties also agree that Green did not reload his shotgun with the additional shells.  Id. ¶ 5.

At the time of Bunch's baton thrust and Green's firing of the beanbag at Astorga, Kiefer claims he was not near either of them, as he was several feet away focused on directing another officer.  Id. ¶ 3.  Astorga disputes this fact, claiming that Kiefer's body camera was pointed directly at Green from a half-of-a-car length away when Green shot Astorga.  Id.  Additionally, Kiefer claims that he was not focused on Green's shots and did not see each shot fired by Green.  Id. ¶¶ 9, 10.  While Kiefer admits that he knew Green was firing the beanbag shotgun, Kiefer claims that he did not know what Green was firing at specifically, and only learned the specifics after receiving Green's report of the incident.  Id. ¶¶ 11, 22.  Astorga disputes these facts, claiming that Kiefer knew Green was firing the beanbag shotgun, as Kiefer's BWV shows that he faced directly at Kahn, who was acting as a peacemaker before he was shot by Green.  Id. ¶¶ 9, 22.  Kiefer then went to retrieve additional beanbag shells for Green, which Astorga claims demonstrates Kiefer's knowledge and approval of the rounds fired by Green.  Id. ¶ 9.

**C.    After the Incident**

Astorga and Green agree that Astorga suffered an injury.  Id. ¶ 34; MSJ 3 at 5.  Astorga claims that she started bleeding heavily once she got to her car, noticed bruises on her stomach, ribs, and breast, and went to the hospital the next morning.  Astorga Dep., 115:21-116:3, 116:11-17, 116:23-117:4, 110:18-24.   She was in pain for three days, her right breast remains disfigured and sore, and she still cannot sleep in certain positions.  Id. at 130:14-18, 127:4-10, 132:8-11.  The parties agree that Green reported his use of force against Astorga to his supervisor, Kiefer, but Astorga claims that Green's report was not accurate.  Dkt. 106-5 ¶ 38.

**III.   LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

elements of each claim upon which the moving party seeks judgment. See <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); see also <u>Celotex</u>, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322; see also <u>Abromson v. Am.</u> <u>Pac. Corp.</u>, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u> <u>Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted); <u>Valley Nat'l Bank of Ariz. v. A.E.</u> <u>Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See <u>Matsushita</u>, 475 U.S. at 587.

## IV.    DISCUSSION

Bunch argues that he is entitled to summary judgment on Astorga's first, second, fourth, and fifth claims for relief. MSJ 1 at 2. He argues that Astorga lacks sufficient evidence showing that (1) he used excessive force in violation of the Fourth Amendment; (2) he retaliated against her in violation of the First Amendment; (3) he is liable for Green's conduct as his supervisor; and (4) she is entitled to punitive damages. Id. Additionally, Bunch argues that (5) he is entitled to qualified immunity on all federal claims. Id. Pursuant to state law, Bunch argues that Astorga cannot provide evidence establishing the elements of a (6) Bane Act claim and (7) battery claim. Id. at 24-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|-----------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

Kiefer also argues that he is entitled to summary judgment on Astorga's first, second, fourth, and fifth claims for relief.  MSJ 2 at 3.  He contends that Astorga cannot prove his liability based on his personal or supervisory conduct.  Id.  Regardless, Kiefer claims he is entitled to qualified immunity on all of Astorga's Section 1983 claims.  Id.  Further, Kiefer claims that Astorga cannot prove a Bane Act or battery claim.  Id.

Green argues that he is entitled to partial summary judgment on Astorga's First Amendment claim for relief.  MSJ 3 at 1-2.  Because Green withdrew his motion as to all claims except for Astorga's First Amendment claim, it is unclear whether he still claims that he is entitled to qualified immunity.  Reply 3 at 1-2.

The Court addresses each issue in turn below, including each defendant's arguments where applicable.

### A.      Section 1983 Fourth Amendment Claim

Section 1983 provides a claim against a person who, acting under color of state law, deprives another of rights guaranteed under the U.S. Constitution.  "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right."  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted).  An excessive force claim is analyzed under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989).

Bunch makes three arguments to defeat Astorga's Fourth Amendment claim: that his baton thrust was a reasonable use of force, that he was not an "integral participant" in Green's use of force, and that he did not fail to intercede in Green's allegedly unconstitutional actions.  MSJ 1 at 8, 11-12.  Kiefer, who did not use force directly against Astorga, argues that he was not an "integral participant" in Green's use of force, and that he did not fail to intercede in Green's allegedly unconstitutional actions.  MSJ 2 at 7.  The Court addresses each argument in turn.

### 1.      <u>Objectively Reasonable Use of Force</u>

Bunch argues that Astorga's excessive force claim cannot withstand summary judgment because his use of force was objectively reasonable.  MSJ 1 at 8-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　**'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

The relevant inquiry is whether officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 (quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97. However, "it is equally true that even where some force is justified, the amount actually used may be excessive." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). Courts apply a balancing test to determine whether force used is reasonable. Graham, 490 U.S. at 396. Courts "must balance [1] the nature and quality of the intrusion on the individual's Fourth Amendment interests against [2] the importance of the governmental interests alleged to justify the intrusion." Scott v. Harris, 550 U.S. 372, 383 (2007) (quotation omitted).

First, courts evaluate "the type and amount of force inflicted." Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003). Here, Bunch used a baton to strike Astorga. MSJ 1 at 9. Baton blows are capable of inflicting significant pain and causing serious injury. Young v. Cnty. of Los Angeles, 655 F.3d 1156, 1161 (9th Cir. 2011). They are "regarded as 'intermediate force' that, while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." Id. Bunch argues that he used minimal force, as the baton only contacted Astorga's forearm and did not injure her. MSJ 1 at 9. Astorga, in opposition, argues that the baton left her with a bruise and three days of pain, and that video footage "shows how hard he jabbed." Opp. 1 at 12.

Second, courts evaluate the countervailing governmental interests by considering a range of factors, including: (a) whether the suspect was actively resisting or attempting to evade arrest by flight; (b) the severity of the crime at issue; and (c) whether the suspect posed an immediate threat to the safety of the officers or others. Lal v. California, 746 F.3d 1112, 1117 (9th Cir. 2014). This list is not exhaustive, though, and courts also consider whether the officer warned the suspect prior to use of force, Bryan v. MacPherson, 630 F.3d 805, 831 (9th Cir. 2010); the parties' relative culpability, Espinosa v. City & Cnty. of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010); and "whether there were less intrusive means of force that might have been used," Glenn v. Washington Cnty., 673 F.3d 864, 876 (9th Cir. 2011). Nonetheless, the "most important" factor is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|-----------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

whether the suspect posed an "immediate threat to the safety of the officers or others." <u>Bryan</u>, 630 F.3d at 826.

Here, Bunch argues that because Astorga's actions constituted an immediate threat of violence, it was reasonable for him to thrust his baton at her to stop the threat. MSJ 1 at 8. Bunch was confronted with a violent crowd of protestors assaulting officers and throwing projectiles; he was struck with weapons and liquid spray. <u>Id.</u> Even after protestors were ordered to leave, Bunch argues that Astorga remained in the front of a group violently confronting officers and refusing to comply with Bunch's orders. <u>Id.</u> Bunch further observed Astorga grab and attempt to pull away officers' batons while raising her hands in a violent manner. <u>Id.</u> at 9.

In opposition, Astorga argues that a reasonable factfinder could determine that her actions did not constitute an immediate threat of violence and that Bunch's use of force was unreasonable. Opp. 1 at 10-11. Astorga contends that, while Bunch relies on Astorga having "pull[ed] away" an officer's baton, this happened almost 15 minutes before Bunch jabbed her, and "a suspect's previous violent conduct does not justify non-trivial force where the suspect poses no immediate safety threat." <u>Andrews v. City of Henderson</u>, 35 F.4th 710, 719 (9th Cir. 2022). <u>Id.</u> at 11. Astorga states that Bunch's claims about Astorga's hands being raised in a violent manner are unsupported by the BWV evidence and that "the more disorderly phase of that day's events ended more than six minutes before" Bunch jabbed Astorga. <u>Id.</u> The BWV evidence, according to Astorga, shows that Astorga approached the police line about four minutes before the jab, speaking to officers and holding her cell phone. <u>Id.</u> Officer Bolen, who was standing in front of Astorga at this time, testified that she was not threatened. <u>Id.</u> Bunch did not even warn Astorga before deploying force. <u>Id.</u> at 11-12.

In reply, Bunch argues that Astorga's reliance on Officer Bolen's perception of the incident is irrelevant, as the focus of the inquiry is the totality of the circumstances as known to Bunch. Reply 1 at 3. Bunch then refutes Astorga's reliance on her "innocent" intent in grabbing another officer's baton and raising her hands toward Officer Bolen, arguing that Astorga's subjective intent is not relevant to the Fourth Amendment analysis. <u>Id.</u> at 5. Finally, Bunch disputes Astorga's characterization of the importance of an officer's warning before deploying force, as no warning was feasible in these circumstances. <u>Id.</u> at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                           'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

Having considered the severity of the intrusion and the importance of the government's interests, the Court must balance these two considerations in order to determine whether the force used was reasonable. Santos, 287 F.3d at 854. Here, reasonable minds could differ on whether the countervailing governmental interests justify the amount of force used by Bunch. There are genuine disputes of material fact as to the amount of force inflicted by Bunch and the reasonableness of his force, particularly in relation to the threat posed by Astorga at the time of the incident. Turning to other relevant Graham factors, it is undisputed that Bunch did not provide a warning before the jab and that Astorga was not resisting arrest or attempting to flee when she was hit.

Based on Bunch and Astorga's testimony and the BWVs, a reasonable jury could choose to credit either Bunch's or Astorga's accounts of the events leading up to the jab, creating a triable issue of fact on whether Bunch's use of force was objectively reasonable. See Sanderlin v. Dwyer, No. 23-15487, 2024 WL 4033065, at *8 (9th Cir. Sept. 4, 2024) ("Ultimately, on this record, the reasonableness of the force used by [the officer] thus turns on how the jury interprets the video footage, and whether the jury credits [the officer's] testimony [about the plaintiff's conduct]."). Therefore, the Court cannot conclude that Bunch's use of force was reasonable as a matter of law. See Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."); Santos, 287 F.3d at 853 (excessive force cases "nearly always require[] a jury to sift through disputed factual contentions, and to draw inferences therefrom").

####       2.      "Integral Participant" Theory

Bunch and Kiefer separately argue that they were not "integral participants" in Green's use of force, entitling them to judgment as a matter of law on Astorga's second theory of Fourth Amendment liability. MSJ 1 at 9; MSJ 2 at 7.

"[O]fficers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act… integral participation requires some *fundamental involvement* in the conduct that allegedly caused the violation." Jimenez v. City of Napa, No. 17-cv-01352-EMC, 2017 WL 2617964 (N.D. Cal. June 16, 2017) (emphasis in original) (citing Jones v. Williams, 297 F.3d 930, 936 (9th Cir. 2002)). "Officers are fundamentally involved in the alleged violation when they provide some affirmative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." Monteilh v. Cnty. of Los Angeles, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citing Boyd v. Benton Cnty., 374 F.3d 773, 780 (9th Cir.2004)).

Here, Bunch argues that he was not "fundamentally involved" in Green's use of force and thus cannot be held liable as an "integral participant." MSJ 1 at 9. Bunch contends that the first element is unsatisfied because he did not provide affirmative physical support to Green. Id. at 10. To the contrary, Bunch did not even see Green deploy the beanbag. Id. at 10. Bunch contends that his statement ("I'm going to push the crowd right here, and if we need to bean bag, we're going to bean bag") was made to convey the plan to push the crowd and alert officers that beanbags may become necessary—not to support Green. Id. Further, Green testified that he deployed the beanbag based on Astorga's conduct, not based on Bunch. Id. at 10-11. Bunch contends that the second element is also unsatisfied because Astorga offers no evidence that he knew, or had reason to know, of Green's alleged plan to commit the violation. Id. at 11.

In opposition, Astorga argues that Bunch was "fundamentally involved" in Green's violation because Bunch's unprovoked baton jab prompted Green to shoot, as it followed Bunch telling Green, "I'm going to push the crowd right here, and if we need to bean bag, we're going to bean bag." Opp. 1 at 12. A reasonable jury could construe this remark as authorizing Green to fire the shotgun to push people back, which Green allegedly did. Id. at 13. Astorga disputes that Bunch made this statement 51 *minutes* before Green's shot, claiming that BWV footage shows that Bunch said it 51 *seconds* before the shooting, after Kiefer ordered the officers to "push" the crowd back from the cars. Id. Astorga characterizes this as direct encouragement from Bunch to Green to fire. Id. While Bunch contends that he did not know about Green's earlier shots, Astorga claims that Bunch's BWV shows him watching Chiu get hit by Green's round. Id. Thus, Astorga argues that a reasonable jury could find that Bunch's instructions and Bunch's baton jab made him an integral participant in Green's use of force. Id.

In reply, Bunch claims that Astorga fails to provide evidence of the required elements. Reply 1 at 8. Further, he contends that no reasonable officer would interpret Bunch's statement as an order to indiscriminately shoot. Id.

Turning to Kiefer's claims, he argues that he was not an integral participant in Green's force because no evidence suggests that he provided affirmative physical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

support. MSJ 2 at 8. Rather, Kiefer stood several feet from Green and was focused elsewhere. Id. Kiefer retrieved additional beanbag shells from Green's patrol car and gave them to Green, but contends that he did not provide the shells with knowledge that Green's prior shots were unlawful. Id. at 9. Additionally, Green did not use any of the additional shells when shooting Astorga, demonstrating that no physical support was provided. Id. Furthermore, Kiefer claims that he was not aware of any plan for Green to shoot Astorga, much less of any plan for him to do so unlawfully. Id. at 9-10.

In opposition, Astorga argues that Kiefer provided affirmative physical support when he resupplied Green's rounds *after* Green fired a dozen rounds at protestors and *before* Green fired at Astorga. Opp. 2 at 10. His provision of additional ammunition proves, according to Astorga, that Kiefer was aware of the number of shots fired and gave Green the "green light" to continue shooting in the same manner. Id. Astorga argues that Kiefer's knowledge of the unlawfulness of Green's conduct is disputed, given his role as supervisor; his knowledge that Green was shooting; and his BWV, which demonstrates that he saw Khan, an "obvious peacemaker," on the curb after Green wounded him. Id. at 11. Astorga also claims that a reasonable jury could disbelieve Kiefer's testimony, given allegedly false descriptions in his activity log. Id. at 11.

In reply, Kiefer claims that it is undisputed that Green did not reload his shotgun after receiving rounds from Kiefer, proving that Kiefer did not provide physical support. Reply 2 at 2. Kiefer also argues that no evidence shows his knowledge of any *plan* for Green to use excessive force against Astorga. Id. at 3.

The Court finds that there are genuine disputes of material fact as to whether Bunch and Kiefer provided affirmative physical support to Green and whether they knew, or had reason to know, of a plan for Green to commit the alleged violation. Viewing the evidence in the light most favorable to Astorga, a reasonable jury could find that Bunch's statement ("I'm going to push the crowd right here, and if we need to bean bag, we're going to bean bag"), spoken 51 seconds before Green's shot, followed by Bunch's use of the baton on Astorga, constituted affirmative physical support for Green to fire on Astorga. Similarly, a reasonable jury could find that Kiefer's provision of additional ammunition for Green before he fired on Astorga constituted affirmative physical support. Compare Boyd v. Benton Cnty., 374 F.3d 773, 780 (9th Cir. 2004) (finding that officers who participated in a search with and provided backup to an officer who unconstitutionally deployed a flashbang were "integral participants" in the unlawful act),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

with <u>Torres v. City of Los Angeles</u>, 548 F.3d 1197, 1206 (9th Cir. 2008) (holding that officer was not an "integral participant" in a false arrest because he was not present at time of arrest, did not instruct officers to effectuate arrest, and did not consult with arresting officers before arrest).

Additionally, a reasonable jury could find that Bunch and Kiefer knew, or had reason to know, of Green's plan to shoot unlawfully at protestors, including Astorga. Viewing the evidence in the light most favorable to Astorga, a juror might infer from Bunch and Kiefer's BWVs that they saw Green firing at protestors like Khan and Astorga. A juror might also infer from the video footage that Bunch and Kiefer could perceive that Khan and Astorga did not pose immediate threats, but that neither officer objected to Green's actions. <u>See</u> <u>Boyd v. Benton Cnty.</u>, 374 F.3d 773, 780 (9th Cir. 2004) (finding that officers were "integral participants" in an officer's unconstitutional deployment of a flashbag when they knew the flashbag was going to be deployed and did not object to it). Further, reasonable jurors may differ in how they evaluate the credibility of Bunch and Kiefer's testimony on their knowledge of Green's alleged violations. <u>See</u> <u>Newmaker v. City of Fortuna</u>, 842 F.3d 1108 (9th Cir. 2016) (summary judgment inappropriate where credibility of defendant officer in dispute).

Given genuine disputes of material fact as to Bunch and Kiefer's affirmative physical support for Green and Bunch and Kiefer's actual or constructive knowledge of Green's alleged plan to violate protestors' rights, the Court finds that neither defendant is entitled to judgment as a matter of law on Astorga's integral participant claim.

3.      "Failure-to-Intercede" Theory

Bunch and Kiefer separately argue that they did not fail to intercede in Green's unlawful use of force, entitling them to judgment as a matter of law on Astorga's third theory of Fourth Amendment liability. MSJ 1 at 12; MSJ 2 at 10.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." <u>United States v. Koon</u>, 34 F.3d 1416, 1446-47 n. 25 (9th Cir. 1994), <u>rev'd on other grounds</u>, 518 U.S. 81 (1996). However, officers can be held liable for failing to intercede only if they had an opportunity to intercede. <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Furthermore, the officer must know or have reason to know that a constitutional violation is occurring.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

See <u>Ramirez v. Butte-Silver Bow Cnty.</u>, 298 F.3d 1022, 1029-30 (9th Cir. 2002).

Here, Bunch argues that Astorga's theory fails because she lacks evidence that Bunch knew Green had previously fired unconstitutionally or that Bunch had a realistic opportunity to intercede. MSJ 1 at 12-14. Bunch argues that the evidence is to the contrary: Bunch's role was to assist Kiefer in managing the squad, not to focus on each particular round fired by Green, which he did not see. <u>Id.</u> at 13. In opposition, Astorga argues that Bunch was Green's supervisor and Bunch knew Green was firing; as such, a reasonable jury could conclude that Bunch noticed Green was shooting people without justification. Opp. 1 at 14. Further, a reasonable jury could determine that Bunch could have realistically interceded by disarming Green after he shot Chiu and Khan, but before he shot Astorga. <u>Id.</u> In reply, Bunch restates the claims from his moving papers, adding that once Green fired, Bunch could not intervene and stop it. Reply 1 at 12.

Turning to Kiefer's claims, he argues that the failure-to-intercede theory fails because he did not have a realistic opportunity to stop Green's shot. MSJ 2 at 10. Further, he did not know that Green's prior shots were unconstitutional. <u>Id.</u> at 11. Kiefer contends that the evidence is to the contrary: as a supervisor, his focus was not on particular individuals or shots. <u>Id.</u> at 12. He did not see each shot fired by Green and did not know what Green was firing at specifically. <u>Id.</u>

In opposition, Astorga argues that Kiefer knew Green was firing the beanbag shotgun and Kiefer saw Khan on the curb, having just been wounded by Green. Opp. 2 at 12. Nevertheless, Kiefer retrieved additional rounds for Green, indicating that he knew and approved of the number of rounds fired. <u>Id.</u> Astorga claims that Kiefer had plenty of time to disarm Green, as the situation stabilized for several minutes after Green's shooting of Khan and Chiu. <u>Id.</u> at 13. Astorga also argues that Kiefer at least had constructive knowledge of Green's unlawful conduct. <u>Id.</u> He was responsible for ensuring that Green followed policy, he was present for Green's prior shootings, he resupplied Green with ammunition, and he repeatedly yelled "Push!" at his officers. <u>Id.</u> at 14. He then allegedly watched Bunch jab Astorga and Green shoot her, and subsequently ignored Astorga's injuries and filed a false report about the incident. <u>Id.</u>

In reply, Kiefer argues that Astorga still fails to show Kiefer's actual or constructive knowledge of Green's unlawful acts. Reply 2 at 4. Kiefer alleges that nothing in the still frame relied upon by Astorga shows that Khan was peaceful or that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

was wounded by Green.  Id.  Rather, Kiefer's BWV shows that Kiefer did not see Khan hit with anything and did not see Green's involvement.  Id. at 5.  Further, Kiefer argues that Astorga does not have evidence to support her allegation that Kiefer falsified incident reports.  Id.  Kiefer was supervising multiple officers, including multiple less-lethal shooters, while dozens of protestors fought and threw objects at him and others.  Id.  Kiefer contends that his retrieval of additional rounds showed, at most, that he knew Green fired the shotgun—not that he knew Green fired unconstitutionally.  Id. at 10.

The Court finds that there are genuine disputes of material fact as to whether Bunch and Kiefer knew, or had reason to know, that Green's acts were unconstitutional and whether they had a realistic opportunity to intercede.  Here, the Court's analysis of Bunch and Kiefer's disputed knowledge mirrors that of the "integral participant theory."  See supra Part IV.A2.  A reasonable jury could find, examining BWV footage and parties' testimony, that Bunch and Kiefer saw Green's shots and knew, or had reason to know, that they were unlawful.  The Court finds that Ramirez, where the officer had no reason to know of the violation, is distinguishable, given the circumstantial evidence offered by Astorga of Bunch and Kiefer's alleged awareness.  See Ramirez v. Butte-Silver Bow Cnty., 298 F.3d 1022, 1029-30 (9th Cir. 2002) (holding that bystander officers could not be held liable for failing to stop an unlawful search when they had no reason to believe the warrant at issue was defective).

Additionally, a reasonable jury could find that Bunch had an opportunity to intercede in the several minutes of "stabilization" before Astorga was shot and that Kiefer had an opportunity to intercede before providing Green with additional ammunition.  See Bartholomew v. Cnty. of Los Angeles, No. CV 07-1530-CAS-SHx, 2008 WL 1924903, at *6 (C.D. Cal. Apr. 28, 2008) (finding that sergeant's ability to have intervened to prevent or control the conduct of his deputies when he was present during their use of force was an issue of fact); see Gonzales v. Phoenix Police Dep't, 2007 U.S. Dist. LEXIS 47949, at *15 (D. Ariz. 2007) ("Whether Plaintiff was hit, kicked, and stomped, and whether Norton could have intervened to prevent the alleged beating by verbally ordering Trynosky or Latham to cease beating Plaintiff or by radioing other officers to intervene are disputed issues of material fact.")

Given genuine disputes of material fact as to Bunch and Kiefer's actual or constructive knowledge of Green's unlawful acts and Bunch and Kiefer's opportunity to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|----------|------------------------|---|------|-----------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

intervene to prevent these acts, the Court finds that neither defendant is entitled to judgment as a matter of law on Astorga's failure-to-intercede claim.

**B.      Section 1983 First Amendment Claim**

Bunch and Green separately argue that they are entitled to judgment as a matter of law on Astorga's Section 1983 First Amendment claim.  MSJ 1 at 14; MSJ 3 at 7.

To establish a claim for retaliatory violation of the First Amendment, a plaintiff must show (1) that he or she was engaged in a constitutionally protected activity; (2) that the defendant's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity;" and (3) that "the protected activity was a substantial or motivating factor in the defendant's conduct."  Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 827 (9th Cir. 2020).

Bunch argues that Astorga cannot prove that Bunch used force against her in retaliation for her alleged First Amendment activities.  MSJ 1 at 14.  As a threshold matter, Bunch contends that Astorga had no First Amendment right to remain in the area after police issued dispersal orders.  Id. at 15.  Even if she did, Astorga's claim fails because she cannot establish that her First Amendment activity was the "but-for" cause of Bunch's use of force against her.  Id.  Bunch claims that the undisputed evidence shows that force was used because of Astorga's actions: fighting with officers, refusing to leave, grabbing an officer's baton, and raising her hands violently.  Id. at 15-16.  Bunch argues that he did not use force because of his alleged view of Astorga as a "continuation of George Floyd protests."  Id. at 16.  While Astorga claims that officer reports referenced Astorga's group as "Antifa or BLM," Bunch claims that no evidence shows he knew that Astorga was associated with these groups or any political viewpoints.  Id.  Even if he did, it would not mean that he used force against Astorga based on this information.  Id.

In opposition, Astorga argues that Sanderlin controls, where the Ninth Circuit denied summary judgment when the plaintiff was hit with a less-lethal projectile at a protest and brought First and Fourth Amendment claims.  Opp. 1 at 14-15.  Like Astorga, Sanderlin was injured after a dispersal order, but was not precluded from asserting his First Amendment retaliation claim.  Id.  Astorga contends that, as in Sanderlin, a reasonable jury could find that Bunch acted with retaliatory animus, especially given conflicts between the BWV and his testimony.  Id. at 16.  In reply, Bunch distinguishes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

Sanderlin, where the plaintiff's testimony was consistent with the officer's BWV, arguing that here, Astorga's testimony does not match the BWV footage. Reply 1 at 8.

Turning to Green's claims, he also argues that Astorga was not engaged in constitutionally protected activity, as LAPD had declared an unlawful assembly at the time of the incident. MSJ 3 at 8. Even if she was, Green claims that there is no nexus between Green's conduct and an intent to chill Astorga's speech. Id. at 7-8. Rather, Green holds that his use of force was based upon his reasonable belief that Astorga was using a sign to push officers and as a weapon to jab or strike officers. Id. at 9.

In opposition, Astorga claims that Green's arguments fail for the same reasons the shooter's claims failed in Sanderlin. Opp. 3 at 10. Astorga contends that neither side of the demonstration dispersed after the dispersal order, as in Sanderlin, and she was not aware of the order until after the incident. Id. While Green contends that there is no evidence of retaliation, the Ninth Circuit rejected this argument in Sanderlin. Id. at 11. In reply, Green argues that the initial reason for Astorga's presence at the demonstration was political, but Green only came into contact with Astorga because the demonstration turned violent. Reply 3 at 4. He contends that a jury could not reasonably conclude from these facts that his "true" motivation was First Amendment retaliation. Id. at 5.

The Court finds that there are genuine disputes of material fact as to Astorga's First Amendment claim. The Court finds that Sanderlin, where the Ninth Circuit affirmed the denial of summary judgment on First and Fourth Amendment claims when the plaintiff was struck with a less-lethal projectile at a protest in summer 2020, is dispositive. Sanderlin, 2024 WL 4033065, at *10. As an initial matter, the Court finds that the dispersal order does not preclude Astorga from asserting her retaliation claim, as neither the Sanderlin plaintiff nor Astorga heard the initial dispersal order. Id. at *7. Sanderlin also distinguished Felarca v. Birgeneau, 891 F.3d 809, 818 (9th Cir. 2018) on these grounds, as the Felarca plaintiffs understood police officers' dispersal orders and chose to ignore or dismiss them. Id.

The Court finds that the first element of Astorga's retaliation claim—that she was engaging in protected First Amendment activity—is a factual issue. In Sanderlin, the Ninth Circuit reasoned:

Whether or not Sanderlin was in fact obstructing officers, rather than engaging in the protected activity of peacefully protesting, will turn on whether a factfinder

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

eventually credits [the officer's] description of the circumstances surrounding the shooting.  According to Sanderlin, he was merely standing peacefully on the sidewalk holding the sign.  Resolving the disputed facts in Sanderlin's favor, he was engaged in protected First Amendment activity.

Id. at *4.  Here, whether or not Astorga was engaged in the protected activity of peacefully protesting will also turn on whether the jury credits Bunch and Green's description of the activities leading up to the use of force.  But according to Astorga, she was not a threat to officers when she was jabbed by the baton or struck by the beanbag.  Thus, the Court must deny summary judgment.

The Court finds that the third element of Astorga's retaliation claim—that Astorga's First Amendment activities were "a substantial or motivating factor" in Bunch and Green's conduct—also turns on factual disputes.  In Sanderlin, the Ninth Circuit held: "If a factfinder concludes that there was no legitimate justification for [the officer's] actions, they could reasonably infer that those actions were motivated by retaliatory animus."  Id.  Here, if a jury concludes that Bunch and Green did not have a legitimate justification for their use of force, they could reasonably infer that the officers acted with retaliatory animus toward Astorga.  Thus, neither Bunch nor Green is entitled to judgment as a matter of law on Astorga's First Amendment claim.  See Index Newspapers LLC, 977 F.3d at 827 (recognizing that whether officer is motivated by discriminatory animus "involves questions of fact that normally should be left for trial"); Duran v. City of Douglas, 904 F.2d 1372, 1377 (9th Cir. 1990) (denying summary judgment on First Amendment claim where officer claimed he lacked retaliatory motive but reasonable juror could find traffic stop was retaliatory in absence of "legitimate, articulate" reason for traffic stop).

Given genuine disputes of material fact as to the elements of retaliation, the Court finds that neither Bunch nor Green is entitled to judgment as a matter of law on Astorga's First Amendment claim.

C.    Section 1983 Supervisory Liability Claims

Bunch and Kiefer separately argue that they cannot be held liable for Green's allegedly unlawful conduct as his supervisors.  MSJ 1 at 17; MSJ 2 at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|----------|------------------------|--|------|-----------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

Pursuant to Section 1983, supervisory liability can be imposed if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). "A plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

Bunch argues that he cannot be held liable under any supervisory theories of Section 1983. MSJ 1 at 17. Bunch contends that his statement ("I'm going to push the crowd right here, and if we need to bean bag, we're going to bean bag"), allegedly made 51 minutes before the incident, was not a direction to Green to deploy the beanbag specifically at Astorga nearly an hour later. Id. at 18. Further, Bunch argues that Astorga lacks evidence that Bunch knew Green's shots were unconstitutional or that Bunch's baton thrust caused Green to shoot Astorga. Id. at 18-19.

In opposition, Astorga contends that the record shows that Bunch, as Green's supervisor, directed Green to "begin looking for possible threats." Opp. 1 at 16. Astorga argues that Bunch watched Green fire 13 rounds, hitting Chiu (an innocent photographer) and Khan. Id. Then, only 51 seconds before Green shot Astorga, Bunch directed Green to "bean bag." Id. A reasonable jury could find, according to Astorga, that Bunch knew of his subordinate Green's unconstitutional acts and acquiesced to them. Id. at 16-17. In reply, Bunch argues that Green's use of force against third parties is irrelevant, because there is no evidence that Bunch was aware of Green's prior shots or that Bunch knew of the circumstances facing Green. Reply 1 at 10. Bunch refutes Astorga's reliance on Bunch's BWV, given that the BWV does not move when an officer turns their head or moves their eyes. Id. Next, Bunch argues that there is no evidence that Bunch did not relay the substance of the EAP briefing to Green or that his failure to do so caused Green to beanbag Astorga unlawfully. Id. at 11.

Kiefer argues that he cannot be held liable as a supervisor under any Section 1983 theory, as Astorga failed to provide evidence that Kiefer knew his subordinates were violating her rights. MSJ 2 at 12. In opposition, Astorga argues that Kiefer knew Green was violating protestors' rights and acquiesced in those violations. Opp. 2 at 14. Astorga contends that Kiefer was Green's supervisor, and with Bunch, directed Green to "begin looking for possible threats" to shoot with his shotgun. Id. at 15. While Kiefer argues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

that he did not know that Green's shots were unconstitutional, Astorga contends that this allegation is disputed by circumstantial evidence. Id. In reply, Kiefer restates his rebuttal of Astorga's prior theories on Kiefer's alleged knowledge. Reply 2 at 11.

The Court finds that there are genuine disputes of material fact as to whether Bunch and Kiefer knew and acquiesced in Green's allegedly unconstitutional conduct, constituting deliberate indifference for supervisory liability. Here, the Court's analysis of Bunch and Kiefer's disputed knowledge mirrors the analysis for Astorga's "integral participant" and "failure-to-intercede" theories under the Fourth Amendment. See supra Part IV.A. A reasonable jury could find, from the BWVs and parties' testimony, that Bunch and Kiefer saw Green's shots and knew they were unlawful based on the absence of threat posed by his targets. A factfinder could then infer that Bunch and Kiefer's knowledge of Green's unlawful shots and lack of response amounted to acquiescence in his unconstitutional conduct. See Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011) (finding that sheriff's "knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his subordinates.").

Given genuine disputes of material fact as to Bunch and Kiefer's knowledge of the nature of Green's conduct, the Court finds that neither defendant is entitled to judgment as a matter of law on Astorga's Section 1983 supervisory liability claim.

### D.   Punitive Damages

Punitive damages are available against individual officers under Section 1983, to be awarded in the jury's discretion. Smith v. Wade, 461 U.S. 30, 56 (1983). The jury must find either that the defendant acted with an evil motive or intent or with reckless or callous indifference to the federally protected rights of others. Id.

Bunch argues that Astorga's punitive damages claim fails under Section 1983 because Astorga cannot meet the burden of showing that Bunch acted with evil intent or callous indifference. MSJ 1 at 25. In opposition, Astorga argues that a reasonable jury could find that Bunch acted with these mental states when he attacked Astorga without provocation or warning and prompted Green to inflict a grievous injury. Opp. 1 at 20. Further, while LAPD policy requires that those struck with a less-lethal shotgun be provided medical attention as soon as practical, Bunch ignored Astorga after the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

shooting, another indicator of evil or reckless intent.  Id.  In reply, Bunch reiterates that Astorga lacks evidence that Bunch acted with the requisite intent.  Reply 1 at 15-16.

The Court finds that Bunch's motion is premature at this juncture, as the punitive damages issue is better decided after a liability determination.  Thus, the Court reserves judgment on Bunch's motion as it relates to punitive damages until a liability determination is made at trial.

**E.    Qualified Immunity**

Bunch and Kiefer each argue that they are entitled to qualified immunity on all of Astorga's federal claims.  MSJ 1 at 22; MSJ 2 at 17-18.  Green argues that he is entitled to qualified immunity on the First Amendment claim.  MSJ 3 at 9, n.1.

"Qualified immunity is an immunity from suit rather than a mere defense to liability," and therefore must be resolved "at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (quotation omitted).  Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id. at 231.  In excessive force cases, it protects officers in the "hazy border between excessive and acceptable force." Saucier v. Katz, 533 U.S. 194, 206 (2001) (quotation omitted).  Accordingly, an officer will be denied qualified immunity in a Section 1983 action if, "(I) taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) the right violated was 'clearly established' at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation."  Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting Saucier, 533 U.S. at 201).  Courts may address either prong first. Pearson, 555 U.S. at 236.  "'[W]hether the violative nature of particular conduct is clearly established'… must be answered 'not as a broad general proposition,' but with reference to the facts of specific cases."  Isayeva v. Sacramento Sheriffs Dep't, 872 F.3d 938, 947 (9th Cir. 2017) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).

Bunch contends that is entitled to qualified immunity on all federal claims.  MSJ 1 at 22.  He argues that a reasonable officer would have found his force to be reasonable, no existing precedent put him on notice that he violated the First Amendment, and no law clearly established that his supervisory conduct was unconstitutional.  Id. at 23-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

In opposition, Astorga argues that Bunch was on notice of relevant clearly established law because he attended a briefing on constitutional uses of less-lethal shotguns *on the day of the incident*. Opp. 1 at 17. Astorga then analogizes to Nelson, where the Ninth Circuit held that "the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors… constitute[d] unreasonable force in violation of the Fourth Amendment." Nelson v. Davis, 685 F.3d 867, 886 (9th Cir. 2012). Id. Astorga also notes that LAPD policy limits the use of the baton as an impact weapon to those who are aggressive or combative or pose a threat to the safety of others. Id. at 18. Astorga claims that exercising her First Amendment rights did not make her a proper target, citing Ford v. City of Yakima, 706 F.3d 1188, 1195 (9th Cir. 2013), Starr, and Sanderlin. Id.

In reply, Bunch argues that Astorga failed to provide precedent existing at the time of the incident which squarely governs the facts at issue. Reply 1 at 13. Bunch then distinguishes several cases relied upon by Astorga as factually irrelevant. Id. at 14. Specifically as to Sanderlin, he argues that the BWV was consistent with the plaintiff's claims that he was peaceful, unlike here. Id. at 15. Further, it could not have put Bunch on notice, as Sanderlin was decided four years after the demonstration. Id. at 15.

Kiefer argues that he is entitled to qualified immunity because Astorga cannot provide case law clearly establishing that his specific conduct was unconstitutional. MSJ 2 at 17-18. In opposition, Astorga contends that Sanderlin is dispositive. Opp. 2 at 16. The Ninth Circuit found that the Sanderlin plaintiff's rights to be free from First Amendment retaliation and excessive force were clearly established as of May 2020, almost three months before the incident here. Id.

In reply, Kiefer argues that Astorga fails to distinguish between Kiefer's claim of qualified immunity and Green's claim of qualified immunity. Reply 2 at 12. Astorga must prove that Kiefer had fair notice that *his* conduct violated clearly established law, not Green's conduct. Id. However, Kiefer claims that cases relied upon by Astorga do not address facts specific to Kiefer's conduct. Id. In Sanderlin, the Ninth Circuit discussed only the actions of the officer who fired the less-lethal ammunition, not the actions of any supervisor. Id. at 13. In Starr, when the plaintiff sued the county sheriff for his deliberate indifference to his deputies' Eight Amendment violations, the Ninth Circuit at most held that supervisors can be liable for their own actions—a principle that is too general to defeat Kiefer's qualified immunity claim. Id. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-03289-CAS-MARx | | Date | October 7, 2024 |
|---|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | | |

Green argues that even if the Court finds that Astorga suffered a First Amendment violation, he is entitled to qualified immunity. MSJ 3 at 9, n.1. In opposition, Astorga argues that Sanderlin defeats his claim. Opp. 3 at 12, 16. It is unclear from Green's reply if he maintained this argument from his original motion. Reply 3 at 1-2.

Here, there are genuine disputes of material fact as to the actions of Astorga, Bunch, and Kiefer leading up to and during the use of force. See supra Part IV.A. Viewing facts most favorably to Astorga, a jury could reasonably find that Astorga posed no threat to the officers. It is also undisputed that she was not arrested and thus did not resist arrest. In these circumstances, Bunch and Kiefer would have been on notice of clearly established law that it was unreasonable to use significant force against her. See Sanderlin, 2024 WL 4033065 at *8 ("We held [in Nelson] that "the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors… constitute[d] unreasonable force in violation of the Fourth Amendment."); see id. at *10 (as of May 29, 2020, "Nelson and Deorle together clearly established that [the officer's] use of force under the circumstances was unreasonable."). In the same vein, Bunch and Kiefer would have been on notice that it was unconstitutional to integrally participate in the use of significant force against her, fail to intervene when significant force was used against her, or knowingly acquiesce to their subordinate's use of significant force against her. See Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) ("[i]f a genuine issue of fact exists as to "what the officer and claimant did or failed to do," qualified immunity at summary judgment is inappropriate); see Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (affirming denial of summary judgment on qualified immunity grounds to officers, including supervisors who did not directly participate in the clearly established unlawful acts, but knew about them, were present for them, and failed to act to prevent them).

Additionally, the Court finds that there are genuine disputes of material fact that prevent the granting of summary judgment on Astorga's First Amendment claims. Viewing facts in favor of Astorga, Bunch and Green retaliated against her because she was engaging in First Amendment-protected protest activity. Sanderlin is dispositive: "[i]t is clearly established law that police officers may not use their authority to retaliate against individuals for protected speech." Sanderlin, 2024 WL 4033065, at *4 (citing Ford v. City of Yakima, 706 F.3d 1188, 1195 (9th Cir. 2013), abrogated on other grounds by Nieves v. Bartlett, 587 U.S. 391 (2019)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

### F.    Bane Act Claims

Bunch argues that he is entitled to summary judgment on Astorga's Bane Act claims because Astorga cannot show that Bunch intended to use unreasonable force to violate her rights.  MSJ 1 at 24.  Additionally, Bunch argues that Astorga's Bane Act claim fails because her Section 1983 claim fails.  Id.  In opposition, Astorga claims that reckless disregard for a plaintiff's rights can also trigger Bane Act liability.  Opp. 1 at 18-19.  Here, Astorga argues that Bunch jabbed her intentionally, knowing it would prompt Green to "beanbag" her in line with Bunch's instructions.  Id.  Bunch's actions thus interfered with her right to free speech and her right to be free from excessive force.  Id. at 19.  Accordingly, Astorga argues that a reasonable factfinder could determine that Bunch's state of mind satisfied the Bane Act standard.  Id.  In reply, Bunch again argues that Astorga lacks evidence to support these claims.  Reply 1 at 15.

The Court finds that there are genuine disputes of material fact as to Bunch's mental state.  See supra Part IV.A2, A3, C.  There are also genuine disputes of material fact as to the reasonableness of Bunch's force and Bunch's potentially retaliatory motive.  See supra Part IV.A1, B.  Because a reasonable jury could infer from BWVs that Bunch acted intentionally or recklessly while violating Astorga's rights, Bunch is not entitled to judgment as a matter of law.

Kiefer argues that he cannot be held liable under the Bane Act because he did not personally use force against Astorga or engage in "threats, intimidation, or coercion."  MSJ 2 at 20.  Kiefer also contends that he did not commit any act with the specific intent of depriving Astorga of her rights.  Id.  Further, Kiefer states that he cannot be held liable as a supervisor pursuant to Cal. Gov. Code § 820.8.  Id. at 19-20.  In opposition, Astorga argues that California law recognizes tort concepts of "aiding and abetting" and "concert of action," both of which make the Bane Act claims against Kiefer viable.  Opp. 2 at 18.  In reply, Kiefer argues that Astorga failed to address his arguments.  Reply 2 at 15.

The Court finds that Kiefer can be held liable under the Bane Act.  See Johnson v. Baca, No. CV 13–04496 MMM-AJWx, 2014 WL 12588641, at *16 (C.D. Cal. Mar. 3, 2014) (finding that several California courts, including the California Supreme Court, have "implicitly held" that a Bane Act claim "can be asserted against a sheriff based on his or her conduct as a supervisor rather than on personal involvement in violence or a threat of violence against a plaintiff.").  After Johnson was decided, several federal courts found that there was no supervisory liability under the Bane Act.  See Est. of Chivrell v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|---|---|---|---|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

<u>City of Arcata</u>, 694 F. Supp. 3d 1218, 1231-32 (N.D. Cal. 2023) ("Courts are divided as to whether a supervisor may be held liable under the Bane Act."). The Court finds the reasoning in <u>Johnson</u> to be more persuasive.

Here, the Court finds that there are genuine disputes of material fact as to Kiefer's mental state and to whether he was personally involved in "threats, intimidation, or coercion" toward Astorga. <u>See supra</u> Part IV.A2, A3. Given Astorga's account of Kiefer yelling "Push!" at officers, knowing that Green was shooting unlawfully, and providing Green with more ammunition to continue shooting, a reasonable jury could find that Kiefer was involved personally or as a supervisor in "threats, intimidation, or coercion" towards Astorga, with specific intent or reckless disregard for her rights. Thus, the Court finds that Kiefer is not entitled to summary judgment on Astorga's Bane Act claim.

### G.   Battery Claim[2]

Bunch argues that he is entitled to summary judgment on Astorga's battery claim because if Astorga's Section 1983 excessive force claim fails, her battery claim also fails. MSJ 1 at 25. In opposition, Astorga claims that viewing the record favorably to her, Bunch's baton blows and participation in Green's shooting constituted unreasonable force, satisfying the elements of a battery claim against a police officer. Opp. at 19.

The Court finds that there are genuine disputes of material fact regarding Astorga's battery claim against Bunch, for the same reasons that there are genuine disputes of material fact regarding Astorga's Fourth Amendment claim under Section 1983. <u>See supra</u> Part IV.A. Accordingly, Bunch is not entitled to judgment as a matter of law.

Kiefer argues that he cannot be liable for battery, as he did not make any physical contact with Astorga. MSJ 2 at 21. Further, Kiefer states that he cannot be held liable as Bunch or Green's supervisor under state law. <u>Id.</u> at 19-20. In opposition, Astorga again argues that "aiding and abetting" and "concert of action" theories make her battery claim against Kiefer viable. Opp. 2 at 19. In reply, Kiefer argues that Cal. Gov. Code § 820.8

---

[2] While Astorga alleged assault and battery claims in her TAC, she appears to only allege a battery claim in her oppositions to defendants' motions. <u>See</u> Opp. 1 at 19, Opp. 2 at 12, Opp. 3 at 19. As such, the Court only discusses Astorga's battery claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-03289-CAS-MARx | Date | October 7, 2024 |
|----------|------------------------|------|------------------|
| Title | Zeeshan H. Khan v. City of Los Angeles et al. | | |

forecloses his liability for state law claims, and that Astorga cannot rely on cases between private parties to hold a public employee liable. Reply 2 at 15.

The Court finds that, viewing facts favorably to Astorga, Kiefer could be held liable for battery as Bunch's supervisor, and is thus not entitled to judgment as a matter of law. A municipal officer is generally not liable for an injury caused by the act or omission of another person, unless that injury is proximately caused by the officer's own wrongful act or omission. Cal. Gov. Code § 820.8. However, a supervising municipal officer may be liable for the acts or omissions of his subordinates if the supervisor directs the acts or personally cooperates in them. See Michel v. Smith, 188 Cal. 199, 201 (1922); Oppenheimer v. City of Los Angeles, 104 Cal. App. 2d 545, 549 (1951).

Viewing evidence in the light most favorable to Astorga, Kiefer knew, or had reason to know, that Green's conduct was unlawful. He nevertheless provided Green with additional beanbag rounds before Green shot at Astorga, indicating his approval and encouragement of Green shooting Astorga. A reasonable jury could infer that Green's provision of supplies and encouragement constituted a wrongful act that proximately caused Astorga's injuries, as Green could have decided to continue shooting based on Kiefer's conduct. Additionally, a reasonable jury could infer that Green's lack of intervention to stop Green's conduct constituted a wrongful omission that proximately caused Astorga's injuries. Thus, a factfinder could determine that Kiefer proximately caused Astorga's injury through his own wrongful act or omission or that Kiefer "personally cooperated" in Green's unlawful acts. The Court therefore finds that triable issues of fact preclude summary judgment on Kiefer's state law immunity claim.

**V.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** Bunch, Kiefer, and Green's motions for summary judgment.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |